IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

REBECCA HOPEWELL                                                                      PLAINTIFF

        v.                              Civil No. 2:14-cv-2122-MEF

CAROLYN COLVIN, Commissioner
Social Security Administration                                                        DEFENDANT

## MEMORANDUM OPINION

      Plaintiff, Rebecca Hopewell, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.**    **Procedural Background:**

      Plaintiff filed her application for DIB on September 26, 2011, alleging an onset date of April 27, 2011, due to back pain, severe migraines, and numbness in the arms, hands, and fingers. Tr. 120, 152, 180-181, 200-201.  The Commissioner denied Plaintiff's applications initially and on reconsideration.  Tr. 75-80.  An Administrative Law Judge ("ALJ") held an administrative hearing on September 7, 2012.  Tr. 35-67, 81.  The Plaintiff was present and represented by counsel.  Tr. 30.

      At the time of the hearing, Plaintiff was 33 years old and possessed an eleventh grade education.  Tr. 38, 153.  Plaintiff had past relevant work ("PRW") experience as a store clerk, cashier checker, assistant apartment house manager, and home health aide.  Tr. 153, 160-179.

      On February 22, 2013, the ALJ found that Plaintiff's degenerative disk disease ("DDD") in the lumbar spine and migraine headaches were severe, but did not meet or medically equal one

of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 23-24.  After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work.  Tr. 24.  The ALJ then found Plaintiff could perform her PRW as a convenience store clerk, cashier checker, assistant apartment house manager, and home health aide.  Tr. 28.

The Appeals Council denied Plaintiff's request for review on April 14, 2014.  Tr. 1-5.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  ECF No. 7.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 10, 11.

**II.    Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011).  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision.  *Id.*

2

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520(a)(4)(v).

**III.    Discussion:**

Plaintiff raises one central issue on appeal: whether the ALJ's RFC determination is supported by substantial evidence. Plaintiff contends that the ALJ's RFC determination is flawed because he rejected Dr. Ted Honghiran's opinion and improperly discredited Dr. Stephen Carney's statement regarding her migraine headaches. We disagree.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id*. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted).

In determining the Plaintiff's RFC, the ALJ considered her medical records (including records from Drs. Arthur Johnson, Robert Fisher, Stephen Carney, Ted Honghiran, and Terry Hoyt), the results of objective tests and examinations, the treatment prescribed, her subjective complaints, the consultative examination and assessment of Dr. Honghiran, the migraine statement

completed by Dr. Stephen Carney, the RFC assessments completed by non-examining medical consultants, and her reported activities. We note Plaintiff's history of back/lower extremity pain, dating back to at least 2006. An MRI of her lumbar spine showed disk degeneration at the L5-S1 level with a very small central disk protrusion. Tr. 272. In 2008, neurosurgeon, Dr. Arthur Johnson, prescribed Lortab, Flexeril, physical therapy, and lumbar epidural steroid injections ("LESI's"). Tr. 274-277. LESI's administered by Dr. Robert Fisher were initially helpful, however, the pain recurred when the Plaintiff returned to work in May 2008. Tr. 290-292.

A three level discogram conducted in May 2008 revealed no provocation of her symptoms at any level. Tr. 279-282, 287-289. A CT scan of her lumbar spine was also normal. Tr. 285-286. Accordingly, Dr. Johnson prescribed additional LESI's, Hydrocodone, Robaxin, and Ibuprofen. Tr. 284. In August 2008, Plaintiff reported a significant reduction in her symptoms following the second injection. Tr. 283. She acknowledged taking her narcotic pain medication occasionally, stating the severe pain only occurred when she was more active. Otherwise, her symptoms were responsive to over-the-counter medication. Tr. 283. Treatment continued through November 2008. Tr. 343-344.

In July 2009, Dr. Carney treated Plaintiff for a migraine headache. Tr. 341-342. After administering Darvocet and Phenergan injections, he prescribed Tylenol and Excedrin Migraine. She continued to report problems associated with migraine headaches in September, October, and November. Tr. 333-338. Dr. Carney gave her samples of and prescribed Maxalt and Dolgic Plus. In November, she indicated that the medications "helped." Tr. 333-334.

In April 2010, Plaintiff complained of back pain following a recent fall. Tr. 314-315. Treatment notes indicate that her exam was not impressive, and a review of her records showed only mild disk herniation. Dr. Carney diagnosed her with mild back pain. He refused to prescribe

pain medication, instead prescribing Flexeril, heat, and nonsteroidal anti-inflammatories ("NSAIDs"). He also indicated that she was active, but protective of her back. Her pain continued, and she next sought emergent treatment in July 2010. Tr. 299-302. An examination revealed a positive straight leg raise on the left, paralumbar tenderness on the left, and paralumbar spasm on the left. The doctor diagnosed her with acute low back pain and lumbar strain, and prescribed Cyclobenzaprine and Lortab. Later that month, Dr. Carney also noted a positive straight leg raise on the left and right with a decreased range of motion in the lumbar spine. After diagnosing acute chronic back musculoskeletal pain, Dr. Carney prescribed NSAIDs for pain control and a short-term muscle relaxer.

An MRI of Plaintiff's lumbar spine dated July 22, 2010, revealed annular rent at the L5-S1 level with a small central disk bulge or minimal central protrusion at the L5-S1 level. Tr. 293, 295, 297, 320, 321. Records from Dr. Carney revealed a decreased range of motion in her back. Tr. 318-319. Accordingly, he referred her to a neurosurgeon and prescribed Flexeril.

On September 1, 2010, Plaintiff returned to Dr. Johnson's office for evaluation. Tr. 304-305. His notes indicated no treatment of her since August 2008. On examination, the Plaintiff exhibited an abnormal gait favoring her left leg, decreased strength in her left lower extremity, a positive straight leg raise on the left, numbness to pinprick along the L5 dermatome, and exquisite pain on palpation of the left lower back. X-rays showed normal alignment, well-maintained lumbar curvature, no degenerative changes, and minimal disk space narrowing at the L5-S1 level. Dr. Johnson diagnosed left lumbar radiculopathy with a central annular rent at the L5-S1 level. He saw no indication warranting surgical intervention and recommended physical therapy with traction to the lumbar spine as well as LESI's. Dr. Johnson also prescribed a Medrol Dosepak in the hope that it would calm the irritation.

6

In October 2010, Plaintiff received her first and only LESI. Tr. 303. In November, she returned to Dr. Carney's office requesting an increase in her Hydrocodone dosage. Tr. 310-311. He agreed and also prescribed Flexeril.

No further treatment was sought until February 24, 2011, when the Plaintiff presented at Dr. Carney's office for medication refills. Tr. 308-309. Again, he diagnosed back pain with a decreased range of motion in her back and granted her refills.

In June 2011, Plaintiff returned to Dr. Carney's office reporting worsening back pain. Tr. 306-307. She reported reinjuring her back while trying to rescue her son in the pool. Dr. Carney prescribed Hydrocodone and Robaxin, diagnosing only back pain with a decreased range of motion.

On October 12, 2011, Dr. Carney completed a migraine statement. Tr. 322. He indicated that she experienced headaches once per week, lasting 24 hours. Dr. Carney also stated that her symptoms included an aura, nausea/vomiting, photophobia, and phonophobia. He noted that she took Hydrocodone to treat her headaches with only a fair response to medication. Further, the doctor opined that her headaches would interfere with her ability to work, resulting in her missing more than one day of work per week.

The following day, Plaintiff presented at Dr. Carney's office requesting medication for her headaches. Tr. 323-324, 362-363. Dr. Carney noted a decreased range of motion in her back and prescribed Hydrocodone, Soma, and Excedrin Migraine. Plaintiff returned the following month reporting continued back pain and requesting medication refills. Tr. 360-361. Again, Dr. Carney noted a decreased range of motion in her back and refilled her medications.

On October 8, 2012, Plaintiff underwent a consultative orthopedic examination with Dr. Ted Honghiran. Tr. 347-357. The doctor noted the only positive finding to be minimal

7

degenerative disk disease at the L5-S1 level. Plaintiff walked normally without a limp, was able to dress and undress herself, could get on and off the table without a problem, could walk on toes and heels, and was able to squat. An examination revealed limited flexion and extension in the lumbar spine. Dr. Honghiran indicated that the tests did not correspond with Plaintiff's symptoms. He found no evidence to justify surgery and did not understand why she was in so much pain. However, he went on to say that she was having chronic low back pain that was quite disabling to her. With the amount of pain she was having, he did not feel she would be able to return to work.

Dr. Honghiran completed an RFC assessment. He determined she could lift up to 100 pounds occasionally; sit, stand, and walk for one hour at a time without interruption; sit for a total of four hours in a workday; stand and walk for a total of two hours in a workday; frequently reach, handle, finger, feel, balance, stoop, kneel, crouch, crawl, work near moving mechanical parts, operate a motor vehicle, work near humidity and wetness, and work near pulmonary irritants, temperature extremes, and vibrations; and, occasionally push, pull, and climb.

The Plaintiff sought no further treatment until April 17, 2013, at which time she presented at Dr. Terry Hoyt's office. Tr. 364-373. Dr. Hoyt noted paravertebral tightness and chronic spasms in her thoracic and cervical spine with tenderness at the L4-5 level. He diagnosed DDD, neuropathy, and poor physical conditioning. Dr. Hoyt prescribed Cymbalta, Phentermine, an 1800 calorie diet, Gabapentin, Tramadol, Soma, and Percocet. Plaintiff returned on May 17, 2013, reporting that Cymbalta helped her back pain, but caused migraines. Dr. Hoyt discontinued the Cymbalta. Plaintiff sought out no further treatment for her condition, and a letter from Dr. Hoyt dated May 21, 2013, indicates that he terminated the doctor/patient relationship. Tr. 373. There is, however, no evidence to explain why he severed the relationship.

On November 16, 2013, Plaintiff was treated in the Emergency Room for hypoglycemia. Tr. 7-15. She apparently experienced a seizure and woke up very confused. The doctor noted a normal range of motion in her extremities, cognitive function within normal limits, a normal EKG, and a normal CT scan of the head.

After reviewing this evidence, the ALJ concluded that the Plaintiff could perform light work "except she can only occasionally climb, balance, crawl, kneel, stoop, operate hand controls, work around hazards such as unprotected heights and heavy moving machinery, and crouch." Plaintiff contests this assessment, taking issue with the ALJ's rejection of Dr. Honghiran's statement that she would not be able to return to work. However, as previously recited, Dr. Honghiran's records are riddled with inconsistencies. Not only could he not find any objective findings to explain her pain, a physical examination failed to yield results consistent with a fully disabled individual. Moreover, Dr. Honghiran completed an RFC assessment that did not show the Plaintiff to be disabled. As such, the ALJ properly dismissed Dr. Honghiran's opinion concerning her disability.

Plaintiff's contention that the ALJ's dismissal of Dr. Carney's migraine statement because he had not treated the Plaintiff in a year is also without merit. While it does appear the ALJ misstated the evidence, the record makes clear that the Plaintiff had last actively sought out treatment for her migraines in 2009. Although Dr. Carney did note her "history of migraines" on each of his treatment notes, she reported no active symptoms, received no active diagnosis, and received no prescription medications to treat this condition between 2009 and 2011. Dr. Carney completed the assessment in October 2011. Interestingly, the next day, she returned to Dr. Carney's office for headache medication, at which time he prescribed Excedrin Migraine. *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (claimant's encounters with doctors appeared

9

to be linked primarily to quest to obtain benefits, rather than to obtain medical treatment). Thus, it is the opinion of the undersigned that the evidence does not support the limitations Dr. Carney claims would result from Plaintiff's migraines.

Although the Plaintiff contends that the RFC assessments completed by the non-examining consultants did not include all of the evidence of record, we note that Dr. Lucy Sauer's affirmance of Dr. Jerry Thomas' findings reveals that she did consider the medical evidence of record at that time. Tr. 328-331. However, the non-examining doctors concluded that Plaintiff's physical impairment was not severe. And, clearly, the ALJ found the Plaintiff to have a severe impairment. Therefore, their assessments are of little value.

Accordingly, it is the opinion of the undersigned that substantial evidence supports the ALJ's determination that the Plaintiff retained the RFC to perform a range of light work. Her ability to perform light work is borne out by her reported level of activity[1], the conservative nature of her treatment, the gaps in her treatment history suggesting that her condition was amenable to treatment, the absence of physician imposed limitations in her medical records, the absence of objective medical evidence to support her subjective complaints, the fact that surgical intervention was not warranted, the absence of corroborating evidence to support the alleged frequency and duration of her migraines[2], and her receipt of unemployment benefits. *See Stormo v. Barnhart* ,377 F.3d 801, 807 (8th Cir. 2004) (holding claimant's daily activities supported the ALJ's RFC finding); *Moore v. Astrue*, 572 F.3d 520, 524-525 (8th Cir. 2009) (holding conservative treatment with over-the-counter medication inconsistent with disabling pain); *Edwards v. Barnhart*, 314 F.3d

---

[1] Plaintiff's reported activities included caring for her boyfriend and three children, caring for her personal hygiene, doing dishes, cleaning the house, driving, riding in a car, shopping in stores for groceries, handling finances, watching television, and attending her children's sporting events and practices. Tr. 182-189, 202-209.

[2] Plaintiff worked with these alleged migraines until 2011. *See Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (impairment is not disabling when claimant worked for years with her impairments).

964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job); *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) (holding that migraine headaches that are controllable and amenable to treatment do not support a finding of disability); *Johnson v. Chater*, 108 F.3d 178, 180-81 (8th Cir. 1997) (applying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability.") (quoting *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991))).

### V.     Conclusion:

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and the decision is affirmed. The undersigned further orders that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 22nd day of June, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE